## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| FLORIAN MIKOLAJCZYK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-86-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Florian Mikolajczyk on February 28, 2012, and a Plaintiff's Memorandum in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff on August 7, 2012. Plaintiff requests that the October 28, 2010 decision of the Administrative Law Judge denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") be reversed or remanded for further proceedings. On November 13, 2012, the Commissioner filed a response, and Plaintiff filed a reply on December 14, 2012. For the following reasons, the Court denies the relief sought by Plaintiff.

## PROCEDURAL BACKGROUND

On November 3, 2008, Plaintiff filed applications for DIB and SSI, alleging an onset date of February 15, 2007. His applications were denied initially and upon reconsideration, and Plaintiff filed a timely request for hearing. The hearing was held on June 11, 2010, before Administrative Law Judge ("ALJ") Marlene Abrams. In appearance were Plaintiff, his attorney Thomas Scully, independent medical expert Dr. Kathleen O'Brien (a licensed clinical psychologist), and vocational

expert Thomas Dunleavy ("VE"). On October 28, 2010, the ALJ issued a decision finding that

Plaintiff was not disabled under the Social Security Act. The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since February 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: major depressive disorder, poly-substance abuse, and history of Hepatitis C (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant's impairments, including the substance use disorders, meet Sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except the claimant would be limited to simple, routine, repetitive tasks in low-stress work environments requiring only occasional decision-making, workplace changes, and interaction with the general public.

8. If the claimant stopped the substance use, the claimant would be unable to perform past relevant work (20 CFR 404.1565 and 416.965).

9. The claimant was born [in 1952] and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date, and thereafter on becoming 55, the claimant is defined as an individual of advanced age (20 CFR 404.1563 and 416.963).

10.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

12.  If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13.  Because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g) and 416.920(g)), the claimant's substance use disorders[sic] is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR 13-21.

On January 4, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

On June 26, 2007, Plaintiff presented to the emergency room at St. Catherine Hospital after attempting to overdose on alcohol, methadone, trazodone, and xanax. His friend reported that Plaintiff had been talking about killing himself for three months. Plaintiff reported that he had numbness on the bottom of his feet for the past year and was told by his doctor that he has neuropathy. He reported having generalized depression with a gradual onset for three months. He was admitted to the hospital and discharged on June 29, 2007. He was diagnosed with opioid induced mood disorder, opioid dependence, cocaine abuse, methadone abuse, hepatitis C, and severe stress. His global assessment of functioning ("GAF") score was 60-70 upon discharge.

On December 9, 2007, Plaintiff was admitted to St. Margaret Mercy Hospital due to suicidal thoughts. His mother and girlfriend had recently died. He had not been able to afford his methadone and had been using opiates. He reported that he "is frustrated with his ongoing opiates use as he has not been able to employ himself gainfully due to addiction issue." (AR 399). He was diagnosed with depressive disorder, NOS, polysubstance dependence, hepatitis C, and assigned a GAF score of 30-40. His judgment was poor, and his insight was limited. He was discharged on December 18, 2007, with a GAF of 60.

A treatment note from May 6, 2008, with Dr. Luis Manyari provides that Plaintiff reported being depressed, being tired all the time, that he had no energy, and that he had pain in his feet like needles off and on. He was diagnosed with polysubstance abuse, hepatitis C, and depression, but chronic fatigue syndrome could not be diagnosed due to his depression. A note from June 4, 2008, provides that Plaintiff reported he was still tired and depressed. A July 2, 2008 note states that Plaintiff reported having insomnia and was unable to get his medications.

4

On May 29, 2008, Plaintiff attended a physical consultative examination with Dr. Kanayo K. Odeluga at the request of the Disability Determination Bureau. Plaintiff reported depression that started years ago but that had worsened in the last six to seven years since his mother died. He reported feeling depressed with anhedonia, poor sleep, suicidal ideation, anxiety, mood swings, loss of energy, and weight gain. Plaintiff told Dr. Odeluga that he worked at the steel mills until July 2003, when he was fired due to drug addiction. Plaintiff did not mention his neuropathy, and on examination of his lower extremities, Dr. Odeluga's findings were normal, including that Plaintiff had sensation to light touch and pinprick and a normal gait. The examiner's impression was severe depression, chronic hepatitis C infection, and heroin dependence on methadone treatment.

On June 5, 2008, Plaintiff attended a psychological consultative examination with Dr. Irena M. Walters, a clinical psychologist, at the request of the Disability Determination Bureau. Plaintiff reported that he was there because he has hepatitis C diagnosed in June 2007, suicidal ideation since the summer of 2003, and depression since his mother died in September 2002. He reported that panic attacks began ten to fifteen years ago and that he has had nightmares, in cycles, all his life. He told her that he was fired from Inland Steel in June 2003 after twenty-nine and a half years because he tested positive for methadone and that he was a driver for Triple A for two and a half years and was fired in January 2007 because of alcohol use. Dr. Walters found that his mood was depressed and that his affect was constricted. He was diagnosed with chronic methadone treatment with history of abuse, depressive disorder, NOS, rule out dysthymia, anxiety disorder, NOS, rule out panic disorder, history of heroin addiction and polysubstance abuse, hepatitis C, neuropathy, and was assigned a GAF of 55.

On January 27, 2009, Plaintiff underwent a second physical consultative examination, this time with Dr. Ikechukwu Emereuwaonu. His presenting complaints were bilateral peripheral neuropathy for about four to five years and panic attacks. He rated the neuropathy as a five or six on a scale of ten and described burning and nonradiating pain associated with numbness and tingling of the feet bilaterally. He reported that it was not worsened by anything and that it was relieved with medication. The examination of the lower extremities were mostly normal with the exception that he had "decreased sensation to light touch and pinprick in both feet." His gait was normal. Plaintiff had mild difficulty with tandem walking, walking on toes, walking on heels, squatting, hopping, and getting on and off the exam table. He was diagnosed with peripheral neuropathy of the lower extremities and panic attacks. Dr. Emereuwaonu opined that aggressive medical management may alleviate his symptoms and improve functioning.

Plaintiff had a second psychological consultative examination on February 4, 2009, this time with Dr. Victor P. Rini, a clinical psychologist. Plaintiff reported being diagnosed with hepatitis C in 2007 and that he has since developed severe neuropathy in both feet. Plaintiff reported that he lost his job as a delivery man for a medical service in 2007 when he was fired after a heated conflict with his boss about his pay rate. Dr. Rini found Plaintiff's mood to be fair, but that his affect was disgruntled and depressed. Plaintiff's intelligence was in the normal range; however, his memory, concentration, and social functioning were below average. He was diagnosed with major depressive disorder, recurrent, moderate, and heroin and alcohol dependence, in partial remission.

On February 17, 2009, Dr. J. Sands reviewed the evidence, giving an assessment of "not severe" with the explanation: "Review of evidence shows peripheral neuropathy does not cause

severe disability." (AR 382). On May 2, 2009, Dr. D. Neal reviewed the evidence and Dr. Sands' review and affirmed.

On February 27, 2009, Dr. Stacia Hill, Ph.D completed a mental residual functional capacity ("MRFC") form as well as a psychiatric review technique form. On the MRFC form, Dr. Hill found Plaintiff moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In support of this opinion, Dr. Hill noted Plaintiff's allegation of disability due to depression, anxiety attacks, and other physical conditions and she thoroughly summarized the medical record and the findings of the consultative examinations, which the Court has set forth above. She found that Plaintiff's allegations appear credible and consistent with the medical evidence; however, "in terms of level of severity of functioning, [Plaintiff's] allegations appear partially credible given [activities of daily living] appear [within normal limits], attention/concentration are moderately impacted but appear reasonable for simple tasks." (AR 322). Dr. Hill opined, "While it is expected that [Plaintiff] would be unable to complete complex tasks, claimant would be unable to complete repetitive tasks on a sustained basis without special considerations." *Id*.

On the Psychiatric Review Technique form, Dr. Hill listed disorders of heroin dependence, partial remission, and alcohol dependence, partial remission. Under the "B" criteria, Dr. Hill found that Plaintiff had mild limitations in restrictions of activities of daily living and in difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or

pace, and no episodes of decompensation. Dr. Hill found no "C" criteria. Dr. B. Randal Horton reviewed the evidence and the February 27, 2009 assessment, and affirmed.

## B. Hearing Testimony

*1.    Plaintiff*

Plaintiff testified that he stopped working in February 2007 due to depression. He testified that his feet are "dead" and that he does not feel much. He said the medication he was given does not help. He testified that when he walks, it is like walking on eggshells. He cannot stand very long at one time and must shift his weight because his feet go numb, and the numbness works its way up his leg. He described the feeling as "burning and dead" and "constant, like, pins and needles." (AR 50). He said he cannot stand for an hour and that the most he can stand is about fifteen minutes.

At the hearing, Plaintiff told the ALJ that he has not used heroin in seven or eight years because he began taking methadone. He denied any relapses of using heroin. He denied using cocaine since the 1970s. He denied currently using marijuana, stating that the last time was fifteen years ago.

A few months after the hearing, Plaintiff planned to start getting counseling at Tri-City. He had a counselor at the methadone clinic, where he testified he had been going for eight to nine years.

Plaintiff testified that he sleeps excessively. He explained that he is starting to be less patient with people. Regarding his concentration, Plaintiff stated that he has trouble thinking for any length of time and felt that he would not be able to keep pace with other workers on a job. He explained that the neuropathy and fatigue would prevent him from working more than a few minutes. He also testified that he would not be able to use his hands on a repetitive basis because he is not mechanically inclined and never worked on small objects.

8

2.    *Independent Medical Expert*

Dr. O'Brien addressed only Plaintiff's mental impairments. She testified at the hearing that his depression has been diagnosed as secondary to his opiate addiction. Her review of the record revealed no evidence of any medication for anxiety or depression. She noted that the February 18, 2010 record from Dr. Belinda Sykes-Belamy gave a diagnosis of neuropathy and did not give a mental health diagnosis. Dr. O'Brien noted that Dr. Sykes-Belamy found Plaintiff to be well oriented, his mood and affect normal, and his behavior appropriate. She noted that Plaintiff had sought hospitalization on two occasions in 2007 for mental health, one of which he was positive for cocaine. She testified that Plaintiff did not report methadone use to any treaters after mid-2008.

Dr. O'Brien agreed with Dr. Hill that, with his record of substance abuse, Plaintiff was elevated to marked limitations for activities of daily living and social functioning and concentration, persistence, and pace. She also agreed that, if his polysubstance abuse were controlled, he should be limited to simple easily learned tasks and would do better in an environment with low public contact, although average contact with supervisors and other employees would be okay. She testified that, if he gets treatment for his depression and anxiety and if he stops using substances all together, he would expect to see significant improvement. She based this testimony on general psychological knowledge that someone with a mood disorder is told not to use substances.

### C. Vocational Expert Testimony

At the outset of his testimony, the VE agreed that, if his testimony differed with information in the Dictionary of Occupational Titles ("DOT"), he would inform the ALJ. The ALJ asked the VE to consider a hypothetical individual who could perform "medium" work that required performing limited simple, routine, and repetitive tasks. The work had to be low stress, with only occasional

decision-making, workplace changes, and interaction with the general public.[1] The vocational expert testified to the existence of three jobs, with approximately 17,000 positions in the regional economy, that could be performed by an individual who had these limitations.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618

---

[1] The limitations to occasional decision-making and workplace changes are identified as "inaudible" in the hearing transcript. However, the ALJ clarified these in her decision, (AR 16, 20), and Plaintiff does not challenge the ALJ's characterization of the VE's testimony in the decision.

(7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

11

1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d

12

668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks remand on three bases: (1) the ALJ did not properly evaluate Plaintiff's credibility and did not account for limitations from all of Plaintiff's impairments; (2) the ALJ did not properly weigh whether Plaintiff's drug and alcohol use were material to the finding of disability; and (3) the RFC did not sufficiently account for moderate limitations in concentration, persistence, or pace. The Court considers each in turn.

### A. Credibility

In making a disability determination, Social Security Regulations provide that the Commissioner must consider a claimant's statements about his symptoms, such as pain, and how the claimant's symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. In determining whether statements of pain contribute to a finding of disability, the Regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id*.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

13

    (1)     The individual's daily activities;
    (2)     Location, duration, frequency, and intensity of pain or other symptoms;
    (3)     Precipitating and aggravating factors;
    (4)     Type, dosage, effectiveness, and side effects of any medication;
    (5)     Treatment, other than medication, for relief of pain or other symptoms;
    (6)     Other measures taken to relieve pain or other symptoms;
    (7)     Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how the conditions affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996); *see also* §§ 404.1529(c)(1); 416.929(c)(1).

    An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009)).

As an initial matter, Plaintiff argues that, because the credibility determination contains the "boilerplate" language identified now in numerous Seventh Circuit Court of Appeals cases, *see, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), it appears that the ALJ first made the RFC assessment and then rejected any allegations inconsistent with the RFC. However, an ALJ's use of the boilerplate language does not amount to reversible error if she "otherwise points to information that justifies [her] credibility determination." *Pepper*, 712 F.3d at 367-68. In other words, the use of the template does not warrant remand when the ALJ gives other reasons, grounded in evidence, to explain her credibility determination. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). In this case, the ALJ gave numerous reasons, grounded in the evidence, and, on the most convincing points, uncontested by Plaintiff, to explain her credibility determination.

First, the ALJ noted that both times Plaintiff was hospitalized in 2007 with complaints of depression, doctors subsequently concluded that he actually sought treatment for heroin withdrawal symptoms and that, other than these hospitalizations, Plaintiff did not seek "any regular and consistent treatment" for his alleged major depressive symptoms. The ALJ also noted "recurrent inconsistencies" that suggest that Plaintiff is "less than forthright and significantly detract from his overall credibility." (AR 18). First, she notes that Plaintiff offered conflicting statements about why he left his last job, specifically that, when Plaintiff applied for disability benefits, he indicated that he "stopped working mostly because of depression," but he later told a consultative psychological examiner that he had been "fired after a heated conflict with his boss about his pay rate." *Id*. The ALJ also noted the contradictions in his testimony regarding drug use. Plaintiff testified that he last used heroin seven to nine years ago, yet he admitted recent use in December 2007 as well as during a consultative examination in February 2009. The ALJ noted that, contrary to his testimony that he

15

has not used cocaine since the 1970s, a hospital drug screen in December 2007 was positive for cocaine use. Finally, the ALJ noted that Plaintiff testified to not using marijuana in over fifteen years, in contrast with Dr. Emereuwaonu's notation of Plaintiff's current marijuana use as well as positive results from a drug test for marijuana in December 2007. Plaintiff does not contest, much less acknowledge, this significant portion of the ALJ's credibility determination. These findings are significant because the ALJ found that these inconsistencies significantly decreased Plaintiff's credibility overall.

In addition, the ALJ considered and described the findings of the consultative examiners and reviewing physicians, noted the lack of medical findings supporting the extent of limitation alleged by Plaintiff, discussed the intensity, persistence, and limiting effects of Plaintiff's symptoms, and the evidence of ongoing drug use even if Plaintiff is seeking methadone treatment.

Other than challenging the boilerplate language, most of the evidence Plaintiff relies on to argue that the ALJ should have incorporated all of his limitations in the RFC are his own self-serving allegations. Again, although a claimant's statements about his symptoms are considered, those statements alone cannot establish that the claimant is disabled; rather, there must be medical signs and laboratory findings that show that the individual has impairments that could reasonably be expected to produce the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(b), 416.929(a); *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) ("As explained by the ALJ, Dr. Woldum's opinion was based on White's subjective complaints rather than accepted medical techniques, and White's complaints were not credible in light of the opinions of numerous physicians who examined him and found no objective evidence to support his claims of debilitating pain."). The Court considers each argument advanced by Plaintiff.

16

First, Plaintiff argues that the ALJ did not account for the effects of his hepatitis C, noting that his fatigue could be caused by the disease. However, the diagnosis of an impairment does not establish that the impairment causes functional limitations. In light of the credibility determination, the ALJ did not err in not incorporating additional functional limitations based on hepatitis C.

Next, Plaintiff contends that the ALJ did not properly consider the effects of Plaintiff's peripheral neuropathy on his ability to sustain full-time work and that the ALJ's reasons for finding the neuropathy not severe at step two are flawed. The ALJ correctly noted that no significant treatment was provided for this impairment and no acceptable medical source indicated any functional limitations that would preclude medium work. The ALJ notes that Plaintiff continued to work as a shuttle bus driver, at the medium exertional level, after his diagnosis of neuropathy in 2005. Although the ALJ wrote that he worked until 2005, the record shows that he worked in that job until 2007. Plaintiff argues that his work in this time period should not be considered adversely for credibility purposes because his onset date is February 15, 2007. However, whatever the reason for Plaintiff's termination from that position (whether for an argument, a positive drug test, or depression), there is no indication that he stopped working because of neuropathy in his feet. The ALJ properly considered whether the impairment exists, and then found that the evidence of record and Plaintiff's credibility did not support the functional limitations asserted by Plaintiff.

Plaintiff mischaracterizes the ALJ's reasoning concerning the lack of treatment for the neuropathy. The ALJ wrote, "However, despite his reports to multiple attending and examining physicians, no significant treatment was *provided* for this impairment." (AR 14) (emphasis added). This is not a case, like those cited by Plaintiff, in which the Plaintiff does not seek or obtain treatment and the ALJ does not explore the reasons for that treatment. *See Shauger v. Astrue*, 675

17

F.3d 690, 696 (7th Cir. 2012) (unexplored gaps in treatment history); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (same); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (failure to seek or follow treatment). Rather, Plaintiff was reporting the neuropathy but the doctors were not treating it, which the ALJ interpreted as downplaying the severity of Plaintiff's symptoms.

Finally, Plaintiff argues that the ALJ erred in relying on the report of the January 2009 consultative examination by Dr. Emereuwaonu, which the ALJ characterized as "essentially normal," because the ALJ does not explain how she arrived at an RFC for medium work when the exam revealed decreased sensation in the feet to touch and pinprick and mild difficulties in areas of walking. Plaintiff also faults the ALJ for relying on the opinions of the non-examining State agency reviewing physicians–Dr. Sands and Dr. Nea;.–who did not provide reasoning for their opinions. What Plaintiff fails to acknowledge is that Dr. Sands and Dr. Neal reviewed the findings of Dr. Emereuwaonu, which included all of the normal findings as well as the findings of decreased sensation and mild difficulties in certain types of walking, and, as physicians whose opinions are entitled to weight under the regulations, opined that "the neuropathy does not cause severe disability." Plaintiff does not identify any evidence that would require the ALJ to give less weight to their opinions. Thus, the ALJ's consideration of this medical evidence is supported by substantial evidence.

Plaintiff's last argument against the ALJ's credibility determination is that, because his work record shows that he worked consistently from 1970 to 2006, the ALJ should have considered his positive work record in determining whether Plaintiff's allegations were credible. *See* 96-7p, 1996 WL 374186, at *5 (statements in the record about a claimant's "prior work record and efforts to work" are considered in the credibility determination). Although the ALJ did not specifically discuss

this factor, it is not clear how Plaintiff's favorable past work history, which, by his own reports, ended because of his drug use, would ameliorate his credibility that the ALJ found to be fraught with inconsistences and contradictions based on his current testimony. Thus, the Court finds that the ALJ's credibility determination was not "patently wrong" and the ALJ adequately explained her finding with specific reasons supported by the record.

### B. Materiality of Drug and Alcohol Use

Plaintiff's second basis for remand is that the ALJ did not properly evaluate whether Plaintiff's drug and alcohol use were material to the finding of disability, and more specifically that the ALJ should not have relied on the testimony of Dr. O'Brien.

As noted by the Seventh Circuit Court of Appeals, "Congress eliminated alcoholism or drug addiction as a basis for obtaining social security benefits: '[A]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Harlin v. Astrue*, 424 F. App'x 564, 567 (7th Cir. 2011) (citing 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935). Under the regulations, the ALJ must determine whether "were the applicant not a substance abuser, [h]e would still be disabled." *Id.* (quoting *Kangail v. Barnhart,* 454 F.3d 627, 628-29 (7th Cir. 2006) (citing 20 C.F.R. § 416.935); *Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir. 2003); *Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001); *Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001)). Thus, under the law, the ALJ must first determine whether the claimant is disabled and, if so, whether there is medical evidence of alcoholism or drug addiction. If there is such evidence, then the ALJ must determine whether the alcoholism or drug addition is a contributing factor material to the disability determination, in other

19

words, whether the claimant would no longer be disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

In an unpublished decision, the Seventh Circuit Court of Appeals held that the "claimant bears the burden of proving that alcoholism or drug addiction is not a contributing factor." *Harlin*, 424 F. App'x at 567 (citing *Kluesner v. Astrue,* 607 F.3d 533, 537 (8th Cir. 2010); *Parra v. Astrue,* 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel,* 192 F.3d 492, 498 (5th Cir. 1999)). However, as suggested in *Whitney*, the Seventh Circuit appears nevertheless to have placed the burden on the Commissioner by holding that "the ALJ [had] not adequately disentangled the effects of Harlin's drug abuse from those of her other impairments." *See Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1094 (N.D. Ill. 2012) (citing *Harlin*, 424 F. App'x at 568). Since *Harlin*, district courts in this circuit as well as courts in other circuits disagree as to who bears this burden. *See Whitney*, 889 F. Supp. 2d at 1094 (providing a summary of the split and holding that the burden is on the Commissioner). Other than *Whitney*, district courts in this circuit have primarily followed *Harlin*, placing the burden on the claimant. *See Rowley v. Astrue*, 1:10-CV-1543, 2012 WL 845585 (S.D. Ind. Mar. 12, 2012); *Hart v. Astrue*, 1:11-CV-43, 2012 WL 639530, at *3 (S.D. Ind. Feb. 27, 2012); *see also Gritzmacher v. Astrue*, 572 F. Supp. 2d 1051, 1060 (W.D. Wis. 2008) (predating *Harlin*); *Mayes v. Astrue*, No. 1:07-cv-193, 2008 WL 126691, at *7 (S.D. Ind. Jan. 10, 2008) (same). In this case, the Court need not weigh in on the issue because the Court finds that, even if the burden is on the Commissioner, the burden has been met.

Plaintiff argues that the ALJ did not explain how the evidence shows that Plaintiff would not be disabled were he to stop using substances, suggesting that the ALJ relied "primarily" on the opinion of Dr. O'Brien, the independent medical expert who testified at the hearing. Pl. Br., p. 12.

This is not the case. First, in the RFC analysis, as discussed in the previous section, the ALJ discussed in detail Plaintiff's two hospitalizations for mental health issues, determining that "[t]he reports from these hospitalizations support less symptomatology from the claimant's depression impairment, but rather the resulting effects of the claimant's chronic drug use." (AR 17). Plaintiff contends that the ALJ fails to identify which part of the record of the December 2007 hospital stay indicates that the primary issue was drug abuse; however, a careful reading of all the records for that stay indeed give that impression, and other than noting that the Axis I diagnoses at discharge from the December 2007 visit were depressive disorder *and* polysubstance dependency, Plaintiff does not point to any records to suggest that drug abuse was not the primary issue precipitating and during the hospitalization.

Second, the ALJ discussed the mental consultative examination with Dr. Rini in February 2009. The ALJ noted Dr. Rini's finding that Plaintiff was functioning in the normal range of intellectual ability, although with below average memory, concentration, and social functioning. The ALJ concluded that "[w]hile these clinical findings support a decreased mental functional capacity, they do not support a complete inability to perform sustained work activity," which she found to be consistent with the RFC. (AR 17).

Third, in the credibility determination, the ALJ noted that, "[d]espite his allegations of major depressive symptoms . . . , there is no evidence that the claimant sought or obtained any regular or consistent treatment for these conditions" but that the exception was the two hospitalizations, which, as discussed, "appeared to be a pretext for obtaining treatment for his withdrawal symptoms." (AR 18). Notably, Plaintiff has not identified any evidence ignored by the ALJ or any evidence to support

a finding that his depression imposed functional limitations greater than those found by the ALJ in the absence of substance use.

Finally, the ALJ called Dr. O'Brien, a clinical psychologist, as an independent medical expert to opine on the materiality of Plaintiff's drug use on a finding of disability. The ALJ noted that Dr. O'Brien opined that, in the absence of substance abuse, Plaintiff "was capable of performing simple, easy to learn tasks, with average contact with supervisors and coworkers, but low contact with the public." (AR 19). Although Plaintiff makes several arguments that Dr. O'Brien's opinion is not based on specifics in his case, Dr. O'Brien does testify about Plaintiff's medical history. She testified, "As . . . I read the record, the claimant has been diagnosed with depression, which is secondary to his opiate addiction." (AR 57). She noted that there are no records of any medication treatment for depression or anxiety. *Id*. She discussed the records of his methadone treatment, including the last record of treatment being in mid-2008, and his subsequent use of alcohol and drugs. Dr. O'Brien noted that Plaintiff presented for an evaluation for depression at East Chicago Community Health on February 18, 2010, but that no medication was prescribed and there appeared to be no follow-up. Plaintiff, who was represented by counsel at the hearing, offered no explanation for the lack of treatment. Dr. O'Brien also testified about the two hospitalizations. Thus, Plaintiff's contention that Dr. O'Brien's opinions are generalizations not based on Plaintiff's medical records is inaccurate. The ALJ did not err in evaluating whether Plaintiff's drug and alcohol use were material to the finding of disability.

### C. Concentration, Persistence, or Pace

Finally, Plaintiff argues that the ALJ did not sufficiently account for his limitations in concentration, persistence, and pace in formulating the RFC. The ALJ found that Plaintiff had a moderate limitation in concentration, persistence, or pace when not using substances. Plaintiff contends that the ALJ's limitation in the RFC to jobs with simple, routine, repetitive tasks does not sufficiently account for this moderate limitation, citing cases for the proposition that a limitation to simple, routine work generally cannot account for a moderate impairment in concentration, persistence or pace. Pl. Br., p. 15 (citing *O'Connor-Spinner*, 627 F.3d at 620-21; *Stewart v. Astrue*, 561 F.3d 679,684 (7th Cir. 2009); *Craft*, 539 F.3d at 677-78; *Kasarksy v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003)). Plaintiff cites his own testimony that he is unable to sustain concentration for more than a few minutes and that he is chronically fatigued, and notes that Dr. Rini opined that Plaintiff had below average memory and concentration. Plaintiff argues that the ALJ has not explained how she has accounted for these limitations or how Plaintiff would be capable of sustaining concentration in competitive employment. Again, this is a misstatement of the decision. As noted in the previous section, the ALJ relied on Dr. Rini's opinion and found that the decreased mental functional capacity does not support a complete inability to perform work.

Perhaps more importantly, Plaintiff fails entirely to acknowledge that the ALJ's RFC did not limit him to jobs with *only* simple, routine, repetitive tasks but also limited him to performing those tasks "in low-stress work environments requiring only occasional decision-making, workplace changes, and interaction with the general public." Plaintiff makes no argument that these additional limitations do not fully accommodate his functional limitations that are supported by the evidence of record and the ALJ's credibility determination. The Court finds that the ALJ did not err in

incorporating limitations in the RFC for Plaintiff's moderate impairment in concentration, persistence, or pace.

**CONCLUSION**

Based on the foregoing, the Court hereby **DENIES** the relief requested in Plaintiff's Memorandum in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 18] and **AFFIRMS** the decision of the Commissioner of the Social Security Administration.

So ORDERED this 30th day of September, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record